IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POLY-AMERICA, LP,                        )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )   C.A. No. 13-693 (SLR)
                                         )
API INDUSTRIES, INC.,                    )
                                         )
                    Defendant.           )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## API INDUSTRIES, INC.'S MOTION FOR JUDGMENT AND OTHER RELIEF

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant API Industries, Inc.*

OF COUNSEL:

William Thomashower
Carla Sereny
SCHWARTZ & THOMASHOWER
15 Maiden Lane, Suite 705
New York, NY 10038
(212) 227-4300

July 12, 2013

# TABLE OF CONTENTS

**Page**

Preliminary Statement And Nature And Stage Of Proceedings ....................................... 1

Summary Of Argument.................................................................................................... 2

Facts from the Pleadings ................................................................................................. 2

ARGUMENT .................................................................................................................. 4

    I.    The Rule 12(c) Standard for Judgment on the Pleadings. ........................................ 4

    II.    The Standard for Design Patent Infringement. ........................................................ 5

    III.    The Accused Box Does Not Infringe As a Matter of Law. ....................................... 9

        a.    The Claims of the Patent in Suit. ...................................................................... 9

        b.    The Defendant's Accused Product................................................................... 10

        c.    Applying the Ordinary Observer Test............................................................... 12

        d.    Applying the Ordinary Observer Test with Knowledge of the
            Prior Art Test. .................................................................................................. 14

    IV.  Discovery Should Be Stayed Pending Resolution of the Potentially
        Dispositive Rule 12(c) Motion for Judgment. ....................................................... 18

CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)....................................................4, 5, 8

*Ayers v. Jacobs & Crumplar, P.A.,*
  C.A. No. 94-658-SLR, 1995 WL 704781 (D. Del. 1995)......................................................18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................................4, 5, 8

*British Telecom v. SBC Communications,*
  2004 WL 5264272 (D. Del. 2004) ...........................................................................................4

*Colida v. Nokia, Inc.,*
  347 Fed.Appx. 568 (Fed. Cir. 2009) ........................................................................................5

*Cotapaxi Custom Design and Mfg., LLC v. Corporate Edge, Inc.,*
  2007 WL 2908265 (D.N.J. Oct. 1, 2007)...............................................................................5, 6

*Crocs, Inc. v. Int'l Trade Com'n,*
  598 F.3d 1294 (Fed. Cir. 2010)................................................................................................6

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
  543 F.3d 665 (Fed. Cir. 2008)..........................................................................................*Passim*

*Ferrell v. Cmty Mgmt Services, LLC,*
  C.A. No. 10-205-SLR, 2011 WL 1750452 (D. Del. 2011)......................................................4

*Gorham Co. v. White,*
  81 U.S. 511 (1871)..............................................................................................................6, 12

*Hall v. Virginia,*
  385 F.3d 421 (4th Cir. 2004) .................................................................................................15

*Halstead v. American International Group,*
  2005 WL 885200 (D. Del. 2005) .............................................................................................4

*Jang v. Boston Scientific Scimed, Inc.,*
  817 F. Supp. 2d 409 (D. Del. 2011)......................................................................................4, 5

*Keurig, Inc. v. Sturm Foods, Inc.,*
  2012 WL 4049799 (D. Del. 2012) ...........................................................................................7

*Keystone Retaining Wall Systems, Inc. v. Westrock, Inc.,*
  997 F.2d 1444 (Fed. Cir. 1993)..............................................................................................19

*Mann v. Brenner*,
   375 F. App'x 232 (3d Cir. Mar. 30, 2010)............................................................18

*Mettke v. Hewlett Packard Co.*,
   2012 WL 1158629 (S.D. Ohio 2012)..................................................................15

*Minkus Electronic Display Systems v. Adaptive Micro Systems L.L.C.*,
   2011 WL 941197 (D. Del. 2011).........................................................................4

*MSA Products Inc. v. Nifty Home Products, Inc.*,
   883 F. Supp. 2d 535 (D. N.J. 2012) ..........................................................*Passim*

*Papasan v. Allain*,
   478 U.S. 265 (1986).............................................................................................15

*Parker v. Kimberly–Clark Corp.*,
   No. 11 C 5658, 2012 WL 74855 (N.D. Ill. Jan. 10, 2012) ...........................*Passim*

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010)................................................................4, 6, 14, 15

*Turbe v. Government of the Virgin Islands*,
   938 F.2d 427 (3d Cir.1991)...................................................................................4

*Venetic Int'l, Inc. v. Mexus Med. LLC*,
   541 F. Supp. 2d 612 (D. Del. 2008)......................................................................4

*Weisman v. Mediq, Inc.*,
   C.A. No. 951831, 1995 WL 273678 (E.D. Pa. May 3, 1995)................................18

RULES AND STATUTES

35 U.S.C. §102...............................................................................................................17

35 U.S.C. §171...............................................................................................................6

35 U.S.C. §271(g) ..........................................................................................................4

35 U.S.C. §285.........................................................................................................3, 20

Fed. R. Civ. P. Rule 12 ...........................................................................................*Passim*

Fed. R. Civ. P. Rule 26 ..................................................................................................18

F.R.E. 201(b).................................................................................................................15

## Preliminary Statement And Nature And Stage Of Proceedings

Defendant API Industries, Inc. ("API") submits this memorandum of law in support of its motion under Fed. R. Civ. P. Rule 12(c) for judgment on the pleadings and to stay discovery. Plaintiff Poly-America L.P. ("Poly") brings this action for infringement of a single design patent, U.S. Patent D569,719 S titled "Product Container" (the "719 Patent"). Defendant filed its Answer and Counterclaims on May 28, 2013, D.I. 6.  A conference is scheduled for July 25, 2013.

API and Poly are competitors in the manufacture and sale of household plastic bags, sold in ordinary cardboard containers at retailers such as Home Depot, Inc. (Kahana Dec. ¶2 ).[1]  The Court is likely familiar with such standard household products, such as the 13 gallon plastic kitchen bags sold in the cardboard box at issue in this case. The patent in suit, Exhibit A to the Complaint (Thomashower Dec. Ex. 1)[2], contains a single design claim based on 10 drawings showing different views of an ordinary, six-sided folding cardboard box, with a front opening, in which the bags are sold to consumers.  This is a simple "technology" for which both the patent design and accused product are fully shown and disclosed by the pleadings. Therefore, the case is well suited for a Motion for Judgment on the pleadings under Rule 12(c).  For the same reason, a stay of discovery pending resolution of this motion is appropriate, because no discovery is needed to compare the patented design to the identified product, which, as demonstrated below, is substantially different as a matter of law.   Further, Plaintiff has conceded that it was not aware of all the differences at the time suit was filed, but nevertheless refuses to dismiss the action.

---

[1]   The Declaration of Defendant's Gabriel Kahana dated July 10, 2013 ("Kahana Dec.") is submitted herewith to show better photographs of the accused box shown in Complaint Ex. B.

[2]   The Declaration of Defendant's attorney, William Thomashower, dated July 12, 2013 ("Thomashower Dec.") is submitted to present pleading documents of record and correspondence relevant to the discovery stay.

(*See* correspondence between counsel, Thomashower Dec. Exs. 5, 6 and 7).  This too is grounds to stay discovery, which Plaintiff wishes to visit on its competitor.

## Summary of Argument

1.      Design Patents are construed according to the pictorial drawings.  Applying the "ordinary observer" test to compare the drawings to the accused product, there are substantial and manifest differences.   No reasonable fact finder could find infringement.

2.      Applying the alternative test of the "ordinary observer conversant with the prior art of record," there are substantial and manifest differences between the patented design and accused product.

3.      Discovery is not needed to compare the issued patent design claim to the accused product of record.  Therefore it should be stayed pending this dispositive motion.

## Facts from the Pleadings

As the Court will see, the only claimed "ornamental features" subject to design patent are the particular opening <u>solely</u> on the front face of the box and three small extended tabs and matching slots on the top flaps of the box to close it.[3]  The bottom of the box is shown as one panel, closed and solid. However, Defendant's accused box shown in a partial photograph as Complaint Ex. B (Thomashower Dec. Ex.  1), is manifestly completely different.  Defendant's box opening is a different shape, extending and opening from the front face across the entire adjacent side panel of the box.  Further, Defendant's box has no tabs and no notches anywhere and has a bottom panel that is formed by folding four bottom flaps, all differences from the design in suit.  (*See* photographs of same box in Kahana Decl. Exs. 2, 3, 4, 5).  The differences between the patented box design and Defendant's accused box are so striking and substantial that, as a matter of design patent law, reviewed below, Defendant's product does not infringe.

---

[3]   These features are functional and would have to be factored out of the comparison, but for purposes of this motion, Defendant will show that the Defendant's box design is so different that it does not infringe even if these elements are considered "ornamental."

Because this action presents such a clear cut case of non-infringement, judgment on the pleadings is appropriate.  Further, Plaintiff is maintaining this action even after admitting that it had not "noticed" "that the flap [opening] extended" on Defendant's box across the entire "right side" panel, until defense counsel pointed this out in a demand to withdraw the Complaint (Thomashower Dec. Exs. 5 and 6).[4]  Accordingly, this Court should also grant Defendant's motion to stay discovery and for an award of costs and attorneys' fees under 35 U.S.C. Sec. 285 if Defendant prevails.

Poly's Complaint identifies a single accused product – "kitchen drawstring bags sold in Home Depot stores" (the "Accused API Container") – and claims that these containers "are virtually identical in design to the product container described and claimed in the '719 Patent." Complaint ¶ 8.  However, this pleaded "conclusion" is contrary to the pleading's exhibits. Poly's single photograph of the Accused API Container in "Exhibit B" to the Complaint is misleading, because (a) it shows only the front panel of the container and therefore does not show that the opening flap on Defendant's product actually spans both the front and side panel, which is not the design claimed in the '719 patent; and (b) the photograph does not show the top flap configuration at all, and therefore does not show that the top flap of Defendant's product lacks any top flap tabs or associated slots, as  claimed in the '719 patent design.[5]  Thus, the differences between the Accused API Container and the '719 Patent – which depicts a container having an opening only on the front face, and having a top flap with three tabs and three associated tab slots, and a solid bottom – are so striking and substantial that, as a matter of law, Defendant's product does not infringe.

---

[4]   Defendant's product accused by Poly which Plaintiff photographed for attachment to the Complaint (*see* Complaint Ex. B) is clearly different in design from the '719 patented design as a matter of law.  Plaintiff Poly knew this and now surely knows because Poly had possession of the accused product to photograph it for the Complaint.

[5]   For a full and accurate depiction of the Accused API Container (SKU 716 866, shown in Complaint Exhibit B), *see* Kahana Dec. Exhibits 2, 3 and 4 which are photographs of the Accused API Container, which is the same accused container.

Despite the fact that the Accused API Container cannot possibly infringe the '719 Patent, Poly brought this lawsuit alleging infringement and has maintained it after acknowledging the differences.   API, therefore, has no choice but to file this motion for judgment and to seek recovery of the legal fees and expenses associated with defending this meritless action.

## ARGUMENT

### I.      The Rule 12(c) Standard for Judgment on the Pleadings.

Because Defendant has answered and counterclaimed, this motion is for judgment on the pleadings, pursuant to Fed. R. Civ. P. Rule 12(c).   This Court has issued ample precedent dismissing claims on the pleadings under Rule 12(c).   "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."    *Venetic Int'l, Inc. v. Mexus Med. LLC,* 541 F. Supp. 2d 612, 617 (D. Del. 2008). "A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991); *Jang v. Boston Scientific Scimed, Inc.*, 817 F. Supp. 2d 409, 413 (D. Del. 2011) (Robinson, J)(dismissing plaintiff's claims on the pleadings);   *Ferrell v. Cmty Mgmt Services, LLC,* C.A.. No. 10-205-SLR, 2011 WL 1750452 at *1 (D. Del. 2011) (motion under Rule 12(c));   *Halstead v. American International Group,* 2005 WL 885200, at *2, n. 1 (D. Del. 2005)(Robinson, J.) (dismissing claims on the pleadings); *British Telecom v. SBC Communications,* 2004 WL 5264272 (D. Del. 2004)(Robinson, J) (dismissing on the pleadings claim that use of fiber optic cables was an infringement under 35 U.S.C. Sec. 271(g)); *see also Minkus Electronic Display Systems v. Adaptive Micro Systems L.L.C.,* 2011 WL 941197 (D. Del. 2011)(Robinson, J.)(dismissing infringement claim under Rule 12(b)(6)).   Because the patent in suit is for a design, and assuming no issues of functionality, there are no issues of claim construction which is limited to the "pictorial" representations in the drawings.  *Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1293 (Fed. Cir. 2010).

Because the Rule 12(b)(6) standard applies, the pleading requirements of *Iqbal* and *Twombly* control.  Thus, Plaintiff may not rely on conclusory allegations of design patent "infringement," especially where the patent drawings and accused product are fully shown in the pleadings so that the Court can determine the issue as a matter of law.

> A plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." ([*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007)] at 545, 127 S.Ct. 1955) (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." (*Id.*) Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." (*Id.*)   *Jang, supra,* 817 F. Supp. 2d at 413.

Particularly because design patents can only claim features as shown in the patent drawings, on a motion to dismiss, courts are able to make the side-by-side comparison of those drawings with the accused product under the "ordinary observer" test and dismiss "as a matter of law" where "no reasonable fact finder could find infringement."  *MSA Products Inc. v. Nifty Home Products, Inc.,* 883 F. Supp. 2d 535, 540 (D.N.J. 2012).  The court in *MSA Products* collected cases dismissing design infringement claims at the pleading stage:

> [C]ourts have dismissed claims of design infringement on Rule 12(b)(6) motions where, as a matter of law, the court finds that no reasonable fact-finder could find infringement. *See, e.g.*, *Colida v. Nokia, Inc*., 347 Fed.Appx. 568, 569–70 (Fed.Cir.2009) (affirming Rule 12(b)(6) dismissal of claim for infringement of cell phone design patents); *Parker v. Kimberly–Clark Corp.*, No. 11 C 5658, 2012 WL 74855, at *2–3 (N.D.Ill. Jan. 10, 2012) (dismissing claim for infringement of design patent pursuant to Rule 12(b)(6)); *Cotapaxi Custom Design and Mfg., LLC v. Corporate Edge, Inc*., 2007 WL 2908265, at *5–6 (D.N.J. Oct. 1, 2007) (same); *Kellman v. Coca–Cola Co*., 280 F.Supp.2d 670, 679–80 (E.D.Mich.2003) (same). 883 F. Supp. 2d at 540.

## II.    The Standard for Design Patent Infringement.

As this Court is well aware, patent infringement generally requires a two-step analysis: "first the court construes the patent, and second the fact-finder compares the accused article to

the patent to determine infringement." *MSA,* 883 F. Supp. 2d at 540.  However, unlike utility patents, design patents involve no claim construction,[6] since the claim must be to a single ornamental design as shown in the drawings under 35 U.S.C. § 171.   As stated by the Federal Circuit, "[f]or that reason, this court has not required that the trial court attempt to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008).   Applying this approach, the court in *MSA* explained:

> In the case of design patents, a court need not conduct elaborate claim construction because the court should construe the design *541 patents as they are shown in the patent drawings.   *Cotapaxi,* 2007 WL 2908265, at *4; see also *Crocs, Inc. v. Int'l Trade Com'n,* 598 F.3d 1294, 1302–03 (Fed.Cir.2010). When considering infringement of a design patent at the second step, courts use the "ordinary observer" test. *Crocs, Inc.*, 598 F.3d at 1303.  *MSA, supra,* 883 F. Supp. 2d at 540-41.  (Emphasis added.)

As the Federal Circuit explained on *rehearing en banc* in *Egyptian Goddess,* the older "point of novelty" test was abandoned for design patent infringement and "in accordance with *Gorham* [*Gorham Co. v. White,* 81 U.S. 511 (1871)] and subsequent decisions, we hold that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." 543 F.3d at 678.   The Federal Circuit explained this as follows:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham*.  *Id.*

---

[6]   Where a design contains both ornamental and functional features, the Federal Circuit has clarified that it is proper in claim construction to "separate[e] the functional and ornamental aspects" because the scope of the design claim "must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1293 (Fed. Cir. 2010).  Although Defendant API believes many of the claimed features such as the opening position, the opening tab and the top flap tabs are functional, at this stage the differences in the overall design from the Defendant's accused box are so substantial that for purposes of this motion, the Court need not address which functional elements should be factored out under *Richardson.*

As demonstrated below, this is such a clear case where the two cardboard box designs are "not substantially similar." Even if dissimilarity were not so clear, this Court would be permitted to consider the designs in light of the prior art, as also explained by the Federal Circuit in *Egyptian Goddess:*

> In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art, as in many of the cases discussed above and in the case at bar. Where there are many examples of similar prior art designs, as in a case such as [*Smith v.*] *Whitman Saddle* [*Co.,* 148 U.S. 674) (1893)] differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art. 543 F.3d at 678.

As discussed below, applying this alternative test for design patent infringement based on the prior art of record also confirms that there is no infringement here as a matter of law. The prior art of record shows "many examples of similar prior art designs" as well as box openings across the front and the adjacent side, such as on Defendant's box. Defendant's box is substantially in the prior art and cannot infringe.

The recent *MSA Products* case is instructive and on point. There, the court applied the above standards on a Rule 12(b)(6) motion and dismissed claims for design patent infringement. Plaintiff's two design patents covered a "Countertop Coffee Pad Drawer" wide enough to hold 6 "coffee pods" for use with single serve coffee brewers. *Cf.* this Court's decision in *Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799 (D. Del. 2012) (describing coffee and beverage cartridges for single serve brewers). The defendants' accused products were three versions of a drawer for holding K-cups that "only appear wide enough to hold three." 883 F. Supp. 2d at 541. Although Plaintiff argued that infringement was a question of fact and "not appropriate for a decision on a motion to dismiss," the court dismissed the claims, relying on the above precedents. The Court compared the accused products side-by-side to the patent drawings and

held that "no reasonable fact-finder could find infringement." *Id.* at 540.  The Court made that comparison on the pleadings and product submissions as follows:

> The FAC and both parties' motion briefs provide illustrations and photographs of the MSA Patents and the K–Cup Units. A side-by-side comparison of the MSA Patents and the three-drawer K–Cup Units makes clear that no ordinary observer could determine that the articles are substantially the same. Both of the coffee pod drawers embodied in the MSA Patents are roughly square shaped, being nearly as long as they are wide, and both are much longer and wider than they are tall. In contrast, both of the three-drawer K–Cup Units are rectangular shaped and are substantially longer and taller than they are wide. The products embodied in the MSA Patents appear to be wide enough to hold six coffee pods across, while the three-drawer K–Cup Units only appear wide enough to hold three. And then there is the obvious difference in the number of drawers as between the three-drawer K–Cup Units and the one-drawer products embodied in the MSA Patents—a storage unit for coffee pods with three drawers is not substantially the same as a storage unit for coffee pods with only one drawer. *See Egyptian Goddess,* 543 F.3d at 682–83 (affirming dismissal of design patent based in part on district court's finding *that rectangular nail buffer with buffing pads on four sides was not substantially the same as rectangular nail buffer with buffing pads on three sides* [Emphasis added]). While there are some ornamental similarities—both are constructed of a combination of metal tubes and wire mesh—and some functional similarities—both are drawers that hold coffee pods—because of the more substantial differences, no ordinary observer, accustomed to purchasing such products, could possibly purchase either three-drawer K–Cup Unit believing it to be either of the products embodied in the MSA Patents or a colorable imitation thereof.  *Id.* at 541.

The court in *MSA* dismissed the design patent claims with prejudice.

Also instructive is *Parker v. Kimberly-Clark Corp.*, 2012 WL 74855 (N.D. Ill. 2012) dismissing a design patent claim under Rule 12(b)(6).  After comparing the claim of the design patent drawings with the accused product (a sanitary napkin), the court concluded that "an ordinary observer" would notice "several differences," so that plaintiff had failed to state "a plausible claim" for infringement, citing *Iqbal* and *Twombly*.  As discussed below, the above legal standards apply to the design patent and the accused box in this case.

### III.  **The Accused Box Does Not Infringe As a Matter of Law.**

#### a.  **The Claims of the Patent in Suit.**

Plaintiff Poly asserts that the Accused API Container infringes Poly's '719 Patent. Complaint ¶ 8.  The '719 Patent was filed for on January 15, 2008 and issued on May 27, 2008. Complaint, Ex. A, annexed as Thomashower Dec. Ex. 1.   The drawings of the '719 Patent show a standard product box having four rectangular sides each arranged at 90 degree angles to each other.  The top box closure is not one piece but shows four smaller, foldable rectangular panels (Figs. 8, 11, 12).  The longer dimension top back panel has 3 small raised tabs to fit into 3 corresponding slots in the opposite top front panel (Figs. 8, 11 and **12** and as shown below).  The bottom of the box has no foldable panels shown but is a single piece (Figs. 8, 9 and 14 ("bottom view")).  The front face of the box has a single opening on the front of the container, starting from about the center of the front panel and ending before the right edge of the front panel in a perpendicular fold, the opening being in approximately a trapezoidal shape with curved sides. The opening begins on the front panel with a smaller foldable tab extension.  See drawings below (Figs. 8 and 14), taken from the patent.



Fig. 8



Fig. 14 ("bottom view")

### b.  The Defendant's Accused Product.

Plaintiff Poly has accused a single API product, the Accused API Container bearing on its face the identification "SKU 716 866" and depicted in Ex. B to the Complaint, annexed as Thomashower Dec.  Ex. 1, and Complaint Ex. B photo annexed as Kahana Dec. Ex. 1. However, as noted above and as the Court will see, Poly's photograph of the Accused API Container in "Exhibit B" to its Complaint is misleading.  Complaint Exhibit B shows only a partial front view of the accused Defendant's box, with no view of the adjacent right side.  Thus, while purporting to show a front opening only on the front face, like the '719 Patent, Complaint Exhibit B does <u>not</u> show the adjacent right panel of the accused box at all, where in fact the opening on the accused box continues from the front panel completely across the adjacent right side panel (see photographs below from Kahana Exs. 2 and 4).  In addition, Complaint Exhibit B shows only a closed top of the accused box, which therefore does not show the top flaps configuration at all.  Thus, Plaintiff has not revealed in Exhibit B that the top flap of Defendant's product lacks any top flap tabs or corresponding top flap slots as shown and claimed in the '719 Patent.  In fact, the Accused API Container is substantially different in its overall appearance, as shown by (a) an opening that spans both the front and adjacent right side panel of the box and (b) top flaps with no tabs and no tab slots, and (c) bottom flaps to fold over to form a closed bottom, all as shown in the photographs below,  Kahana Dec. Exs. 2, 3 and 4.  In Ex. 2 below, the box's front to full side opening is identified by the red marker drawn along the outline of the perforations for the opening showing the complete contour of the opening.  Kahana Dec. ¶ 4 and Ex. 2 as follows:



Kahana Dec. Exhibit 2

The above also shows that there are no tabs, no notches and that the box bottom is formed of flaps the fold in, not a solid bottom as in the '719 Patent.

Kahana Dec. Ex. 4 (also reproduced below) shows a photograph of the same Accused API Container SKU 716 866 with the box opening in the completely open position, again showing that the opening is large and opens both on the front panel and completely across the adjacent right side panel.



Kahana Dec. Exhibit 4

Likewise, Kahana Dec. Ex. 3 (reproduced below) is a photograph of the Accused API Container, showing the top opening flaps. This shows that there are neither top opening tabs nor slots, as shown in the '719 Patent. Plaintiff had to know these facts because Plaintiff has the actual accused box which Plaintiff depicted in its photograph, Complaint Exhibit B.



Kahana Dec. Exhibit 3

###### c.   **Applying the Ordinary Observer Test.**

As explained above in *Egyptian Goddess* and followed in *MSA,* the first test for design patent infringement is what the "ordinary observer" perceives:   "[W]e hold that the ordinary observer test should be the sole test for determining whether a design patent has been infringed. Under that test, as this court has sometimes described it, infringement will not be found unless the accused article embod[ies] the patented design or any colorable imitation thereof."   543 F.3d at 678 (citations omitted).   Under this approach, the court simply compares the drawings to the accused product:   "In some instances, the claimed design and the accused design <u>will be sufficiently distinct that it will be clear without more that the patentee has not met its burden</u> of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham*." *Id.* (emphasis added).[7]

---

[7]   Specifically, the Federal Circuit quoted *Gorham Co. v. White*, 14 Wall. 511, 81 U.S. 511 (1871) as "set[ting] forth the test that has been cited in many subsequent cases: '[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.' 81 U.S. at 528. 543 F.3d at 670.   In view of the differences, no one would be "deceived" to purchase Defendant's box "supposing it to be" Plaintiff's design.

That is the case here. The designs are more than "sufficiently distinct" on their face.  The '719 Patent depicts a product container with:

(A) a particular shaped opening, placed only on **one larger side** of the box; and

(B) **three tabs** on the longer edge of the back top closure flap, with associated **three tab slots** on the opposite front top closure flap; and

(C) a solid bottom.

The Accused API Container has none of these features.  Specifically, the Accused API Container has:

(A) a larger and longer opening that spans **two sides**, namely opening on both the wider front and narrower adjacent side panel; and

(B) has **no tabs** and **no tab slots** anywhere; and

(C) does not have a solid bottom, but has a bottom formed of four folded sides, like the top.  Thus, the accused box is an entirely different design and a side-by- side comparison of the '719 Patent and the Accused API Container makes clear that an ordinary observer would find them "plainly dissimilar" and not substantially the same.

The fact of difference (A) above that Defendant's box opening extends across two sides of the box, not just one, is <u>alone</u> sufficient for non-infringement as a matter of law under the holding of *Egyptian Goddess*, which is on point.  The Federal Circuit affirmed summary judgment for defendant that an accused rectangular nail buffer product with buffing pads on **four** sides was not substantially the same as the patented design which depicted buffing pads on only **three** sides.  *Egyptian Goddess, Inc.*, 543 F.3d at 682-83.  Similarly the court found in *MSA,* 883 F. Supp. 2d at 541: "a storage unit for coffee pods with three drawers is not substantially the same as a storage unit for coffee pods with only one drawer."  Accordingly, even *arguendo,* the same "ornamental feature" appearing in a different number of places is sufficient for non-infringement as a matter of law.  And here there are two additional points of difference, (B) and (C) above, in plain view to the ordinary observer.

Likewise, in *Parker, supra,* noted differences in the rounded end of the accused product compared with sharp edges in the patent claim:

> This side-by-side comparison illustrates several differences that an ordinary observer would notice as between the two napkins. The ′611 Patent pad is flat at its ends, with extremely sharp edges at both sides. By contrast the Poise Hourglass Pad has a rounded end on one side and a heart shaped end on the other. In *Richardson v. Stanley Works* the Federal Circuit found that there was no infringement of a patentee's carpentry tools because "[o]verall, the accused products clearly have a more rounded appearance and fewer blunt edges than the patented design." *Richardson v. Stanley Works*, 597 F.3d 1288, 1295 (Fed.Cir.2010). The same conclusion applies here . . . . *Id.* at * 2.

Likewise, in the present case, the opening in the design patent is confined to the front face and is defined by curved lines on two sides, intersecting a perpendicular straight fold near one box edge and a shorter, curved tab on the other end of the lines at the opening end. Presumably the shorter curved tab is to provide a means to press in to the box to start the opening along the perforations, and to make a convenient tab for reclosing.[8] In contrast, the accused box has straight lines, not curved, running across both the front face and right side panel, and no perpendicular fold at the box edge, because the opening continues across the entire adjacent right panel.

In view of the foregoing substantial differences of record, as a matter of law Defendants' accused box cannot infringe the '719 Patent. And Plaintiff must know this.

### d.  Applying the Ordinary Observer Test with Knowledge of the Prior Art Test.

The alternative test utilizing the prior art makes the non-infringement even clearer. Again *Egyptian Goddess* explains:

---

[8]  Again, Defendant does not ask the Court on this motion to address the obvious functionality of having a front box opening for a box of plastic bags, and the functionality of the various tabs shown in the design patent, such as the one on the front face to facilitate opening and reclosing and tabs on the top to provide a means of closure.

> In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art, as in many of the cases discussed above and in the case at bar. *Id.* at 678.

This is because the prior art may show that differences not "noticeable in the abstract become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id.*

The '719 patent as issued cites 20 "U.S. Patent Documents" as prior art "cited by the Examiner." Thomashower Dec. Ex. 1, Complaint Ex. A, p.2. Seven of these references are exemplary and annexed to the Thomashower Dec. as Exs. 4A-4G. Art of record cited in the patent in suit is part of the Complaint on a Rule 12 motion, and in any event, the Court may take judicial notice of USPTO documents without converting to a motion for summary judgment. *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)(judicial notice of "public record"); *Mettke v. Hewlett Packard Co.,* 2012 WL 1158629 at n. 2 (S.D. Ohio 2012) (granting in part Rule 12(b)(6) motion taking judicial notice of the patent file wrapper, citing F.R.E. 201(b) and *Hall v. Virginia,* 385 F.3d 421, 424 n.3 (4th Cir. 2004)). The seven reference examples are as follows:

• D 353,358 to Jobit (Thomashower Dec. Ex. 4A) is a design patent for "Package for a Bottle of Champagne." The design shows almost the same trapezoidal shape opening as the '719 patent across the front face, ending in a small tab across the adjacent side.

• D 412,114 to Hansen (Thomashower Dec. Ex. 4B) is a design patent for a "Box" showing a folding box with a perforated opening and end tab similar to the '719 patent but in a rectangle shape on one face and continuing to a trapezoidal shape on the adjacent face. This box therefore illustrates the concept of the opening extending across two adjacent panels of the box, like the accused box, and using a trapezoidal shape. The '719 opening is only across part a single front panel.

• D 419,440 to Hansen (Thomashower Dec. Ex. 4C) is a design patent for a "Box" very similar to the prior listed patent to the same inventor, except that the perforated opening

continues from a rectangle on one face to a triangle shape on the adjacent face, rather than a trapezoid.

    •  D 433,630 to Lubineau-Bigot (Thomashower Dec. Ex. 4D) is a design patent for a "Box" showing a folding box top with perforations defining a rectangular opening on a single front face with a tab extending into the box behind an adjacent face.

    •  D 465,416 S to Dzwill (Thomashower Dec. Ex. 4E) is a design patent for a "Container for Packages of Contact Lenses" showing a trapezoidal shape opening across a front side with an end tab that can be "tucked in" (description of Fig. 8) and at the other end, extending to open the adjacent side (Fig. 7) like Defendant's accused box.

    •  D 486,731 S to Meeker (Thomashower Dec. Ex. 4F) is a design patent for a "Box" which has an opening beginning very much like the '719 patent with a trapezoid shape starting part way across the front face, and continuing (like the accused box) across the entire adjacent side.  This design also has two opposite box sides that are concavely curved in toward the box center.  Except for the curvatures, the design of this opening is markedly the same as the Accused Aluf Container starting part way on the face in a trapezoidal shape and continuing the opening across the adjacent side.

    •  D 563,219 S to Okin (Thomashower Dec. Ex. 4G) is a "Carton for Dispensing Personal Care Articles" (apparently a common tissue box) having an opening on one side only, with a tab at the end and terminating on the other side before the edge of the box.  This design is very similar to the '719 opening, in its opening placed on a single face, with end tab, except that the opening shape is not trapezoidal as in the '719, but curved along part of the front end, and straight on the other two edges.

    These seven of the 20 cited references, show that this "box design" art is a crowded field, so that if Plaintiff's design patent is to be valid, it has a "narrow range of coverage" in assessing accused designs, otherwise it will read on the prior art.  *Parker,* 2012 WL 74855 at *2.  And as in *Egyptian Goddess*, the many "similar" examples in the prior art show that even minor

differences are "significant to the hypothetical ordinary observer who is conversant with the prior art." 543 F.3d at 678. Moreover, the patent to Meeker, Ex. 4F, discloses the opening position and shape across two adjacent panels, which is very close to that found in the accused box. Necessarily, Plaintiff may not claim coverage for an opening across two adjacent panels as found in the cited prior art. Hence Plaintiff cannot show infringement on virtually the same opening found in Defendant's accused box.

Finally, although it is not the subject of this motion to show invalidity under 35 U.S.C. §102 or §103, it should be noted that a nearly identical box opening as shown in the '719 design is shown in a prior art drawing for a box for "CPI Plastics Group Ltd." dated June 5, 2007 (prior to the January 15, 2008 filing date of the '719 patent) annexed as Exhibit A to the Answer (Thomashower Dec. Ex. 2). This also shows an opening beginning about halfway on the front face, in trapezoidal shape, with an end tab, but extending only partially into the adjoining side. Again, this is evidence that the accused box is simply in the prior art and hence cannot be claimed as an infringement.

The fact that so many of the prior art references illustrate an opening that has a trapezoid opening on the front face (Exs. 4A, 4E, 4F) or an opening limited to the front face like Plaintiff (Ex. 4A, 4G) demonstrates in the words of the *Parker* case that this shape and opening design is "known in the prior art" and that the prior art is "closer in design to the [plaintiff's] patent than does the [defendant's product]." *Parker,* 2012 WL 74855 at *2.

Similarly, the fact the prior art shows an opening that extends from the front face to a second side, and often in a trapezoidal shape, (Exs. 4B, 4C, 4D, 4F) illustrates that the Accused Aluf Container with the same opening is, in the words of *Egyptian Goddess,* found in "examples of similar prior art" references.

> In light of the similarity of the prior art buffers to the accused buffer, we conclude that no reasonable fact-finder could find that EGI met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design.

[We] conclude[e] that a reasonable fact-finder could not find infringement in this case . . . . 543 F.3d at 684.

### IV.   Discovery Should Be Stayed Pending Resolution of the Potentially Dispositive Rule 12(c) Motion for Judgment.

Plaintiff is a competitor of Defendant and as shown above, has brought a meritless suit and even refused to dismiss it after acknowledging that it had not previously "noticed" the differences in the box openings. On these facts, Plaintiff's intent is clear – to use an issued design patent on a low-tech cardboard box to burden a competitor with costly patent litigation and discovery, even in the face of substantial differences showing non-infringement.

Under Fed. R. Civ. P. Rule 26, the Court has the authority and discretion to determine the timing and sequence of discovery. Fed. R. Civ. P. 26(b)(2)(C)(iii). A stay here is particularly appropriate because there is a pending dispositive motion on a single design patent in a simple, art, with all the relevant materials shown in the pleadings. Discovery is not needed to compare the product to the design. Thus the likelihood that such motion may result in early resolution outweighs the harm from any delay and avoids burden and expense to the parties. *Ayers v. Jacobs & Crumplar, P.A.,* C.A. No. 94-658-SLR, 1995 WL 704781 at *1 (D. Del. 1995), *aff'd,* 99 F.3d 565 (3d Cir. 1996)(court granted stay of discovery pending a motion to dismiss). *See Mann v. Brenner,* 375 F. App'x 232, 239 (3d Cir. 2010)(noting the District Court had the discretion to issue a stay of discovery pending resolution of the motions to dismiss). "Where a pending motion to dismiss may dispose of the entire action and where discovery is not needed to rule on such motion, the balance generally favors granting the motion to stay." *Weisman v. Mediq, Inc.,* C.A. No. 951831, 1995 WL 273678 at *2 (E.D. Pa. May 3, 1995).

In considering the stay, the Court can take notice of the unsupportable factual position taken by Plaintiff's counsel in maintaining this action. Before answering the Complaint, Defendant's counsel wrote to Plaintiff's counsel on May 17, 2013 asking them "to withdraw the complaint on the grounds that the accused product as a matter of law does infringe" the patent in suit. (Thomashower Dec. Ex. 5, p.1). The letter pointed out the substantial differences in the

boxes and cited *Egyptian Goddess.*   By letter of May 23, Defendants' counsel refused to withdraw the action but conceded with respect to the accused box opening across two not one panel, that "It was not until you pointed this out in your letter that Poly-America first noticed that the perforation extended down the side of the package." (Thomashower Dec. Ex. 6 at p.2).   This statement is disingenuous at best, as the Court will readily see upon inspection of the accused box (to be submitted with this motion).   This accused box was concededly in Plaintiff's possession prior to suit.   Plaintiff's minimal due diligence pre-filing examination of this accused box could not have missed the clear perforations for the opening across both panels, as opened by any consumer of the product.

Plaintiff offered the further argument that the "front portion" is "dominant" and the three tabs and notches "remain closed during the entire life of the product" and are "not proper subjects for design patents," citing a case.   *Id.*   If this is so, then those features should not have been claimed.   And as a matter of law, design patent drawings are viewed for their overall appearance, not a "dominant" feature, which in any event the front face opening is not (see Kahana Dec. Ex. 4, reprinted in Point III(b),   *supra,* showing a large opening of almost equal area on both the front and side panels).   As Defendants' counsel made clear in response, the perforations and extent of this opening "were manifestly evidenced on defendant's box in your client's possession are in fact part of the box opening, whether your client 'first noticed' it or not."   Thomashower Dec. Ex. 7, p. 1, letter of May 24, 2013.[9]   The Court's own examination of the accused box will reveal the lack of credibility in Plaintiff's position and expose the intent to prolong this litigation, warranting a stay.

---

[9]   Defendant's letter also disposed of the claim that the tabs and notches would not be seen because they "remain closed" during the life of the product. First this is untrue, since the box starts out its "life" open and has to be formed and closed for packaging.  Second, as a matter of law the design is "defined by the drawings in the patent, not just one feature" and the accused product must be considered in its entirety, "not solely the front face" in a particular "use."  *Keystone Retaining Wall Systems, Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed. Cir. 1993).

## **CONCLUSION**

In sum, there is no possibility for design patent infringement by the Accused API Container, because in its simplest difference, a container which opens on two sides is not substantially the same as a container design showing openings only on one side; and a container with no tabs and no tab slots is not substantially the same as a container with three tabs and three associated tab slots on the top opening.  *See Egyptian Goddess*, 543 F.3d at 682-683; *MSA Products, Inc.*, 883 F. Supp. 2d at 541.

For the reasons set forth above, API respectfully requests that the Court grant API's motion to stay discovery and for judgment on the pleadings.  The Court should then entertain an assessment of Defendants' costs and attorneys' fees under 35 U.S.C. § 285.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant API Industries, Inc.*

OF COUNSEL:

William Thomashower
Carla Sereny
SCHWARTZ & THOMASHOWER
15 Maiden Lane, Suite 705
New York, NY 10038
(212) 227-4300

July 12, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 12, 2013, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Erica W. Harris, Esquire                                    *VIA ELECTRONIC MAIL*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
*Attorneys for Plaintiff*


                                                    */s/ Michael J. Flynn*
                                                    _____
                                                    Michael J. Flynn (#5333)