IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLY-AMERICA, LP, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | )    C.A. No. 13-693 (SLR) |
| | ) |
| API INDUSTRIES, INC., | ) |
| | ) |
|        Defendant. | ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT API INDUSTRIES, INC.'S
MOTION FOR JUDGMENT AND OTHER RELIEF**

                                                  MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                  Jack B. Blumenfeld (#1014)
                                                  Michael J. Flynn (#5333)
                                                  1201 N. Market Street
                                                  P.O. Box 1347
                                                  Wilmington, DE  19899-1347
                                                  (302) 658-9200
                                                  jblumenfeld@mnat.com
                                                  mflynn@mnat.com

OF COUNSEL:                               *Attorneys for Defendant API Industries, Inc.*

William Thomashower
Carla Sereny
SCHWARTZ & THOMASHOWER
15 Maiden Lane, Suite 705
New York, NY 10038
(212) 227-4300

August 8, 2013

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................................1

I. PLAINTIFF IGNORES THE "OVERALL" APPEARANCE TEST AND CONTINUES TO RELY ON MISLEADING PHOTOGRAPHS ......................................................2

   A. Plaintiff Continues to Rely on Misleading Photographs. .....................................3

   B. Infringement is Based on the Overall Appearance of the Patented Design of an Accused Product, Not One Feature. ..................................................................4

   C. Plaintiff Cannot "Read Out" of the Overall Design Those Portions of Its Patent Drawings which Show No Similarity to the Accused Product ..............................4

II. PLAINTIFF'S ATTEMPT TO READ OUT CLAIMED ELEMENTS OF THE DESIGN DRAWINGS AS "NOT OBSERVABLE" IS CONTRARY TO FEDERAL CIRCUIT PRECEDENT. ..................................................................................................5

   A. The Ordinary Retail Consumer Would See All the Box Features in the Design at Some Point in the Life of The Product. ................................................................6

   B. Alternatively, the Ordinary Observers Are the Plastic Bag Manufacturers, Like Plaintiff and Defendant, Who See All Features of the Design During the Assembly of the Ultimate Retail Product. ............................................................7

III. THERE IS NO POSSIBLE INFRINGEMENT UNDER THE ALTERNATIVE TEST OF *EGYPTIAN GODDESS* OF THE HYPOTHETICAL ORDINARY OBSERVER WITH KNOWLEDGE OF THE PRIOR ART. ...................................................................8

IV. API SHOULD BE AWARDED ITS ATTORNEYS' FEES. ..........................................9

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**

*Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
   501 F.3d 1314 (Fed. Cir. 2007) ...................................................................................1, 8

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002) .................................................................................*passim*

*Door-Master Corp. v. Yorktowne, In*c.,
   256 F.3d 1308 (Fed. Cir. 2001) ...................................................................................5, 7

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ............................................................................... 2, 4, 8, 9

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
   1262 F.3d 1113 (Fed. Cir. 1998)..................................................................................5, 8

*Great Western Min. & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010) ...........................................................................................3

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc*.,
   997 F.2d 1444 (Fed. Cir. 1993) .....................................................................................5

*MSA Products Inc. v. Nifty Home Products, Inc.*,
   883 F. Supp. 2d 535 (D.N.J. 2012) .............................................................................2, 3

*Parker v. Kimberly-Clark Corp.*,
   No. 11 Civ. 5658, 2012 WL 74855 (N.D. Ill. 2012).................................................9

*Unette Corp. v. Unit Pack Co.*,
   785 F.2d 1026 (Fed. Cir. 1986) .....................................................................................7

**OTHER**

35 U.S.C. § 285....................................................................................................................10

Fed. R. Civ. P. Rule 12(c) ......................................................................................................1

**PRELIMINARY STATEMENT**

Plaintiff Poly-America L.P. ("Poly") brought this action for infringement of a single design patent, U.S. Patent D569,719 S titled "Product Container" (the "'719 Patent"). Defendant API Industries, Inc. ("API") submits this Reply Brief in support of its motion under Fed. R. Civ. P. Rule 12(c) for judgment on the pleadings, to stay discovery and for attorneys' fees.

As set forth in Defendant's Memorandum in Support of its Motion ("DM"), the side-by-side comparison of the fourteen patent drawings with the simple six-sided accused box, as required by Federal Circuit precedent, leaves no doubt that the accused box design is substantially different from the patented design in overall appearance. At the July 25, 2013 scheduling conference, the Court indicated it would endeavor to move this motion up for consideration and determine whether it was necessary to see the accused box sample – which is available for submission -- or to have oral argument.

As set forth below, plaintiff presents more misleading photographs of the accused product, showing it only partially opened, as was done in its Complaint Ex. B. And no legal issue is raised by plaintiff's argument that the ordinary observer test should be limited here to a consumer who "sees the box when it is merchandised in the store, when she is making her purchasing decision and when she opens the container."[1] (PM 7.) This is flatly contrary to settled Federal Circuit precedent – that the comparison is side-by-side as if by a "hypothetical ordinary observer" at any time in the life of the product, "not simply those views a retail customer seeking to buy would likely see when viewing the product at the point of sale. *Contessa* [*Food Prods., Inc. v. ConAgra, Inc.,*] 282 F.3d [1370,] at 1379." *Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1324 (Fed. Cir. 2007).[2]

---

[1] Plaintiff submits an alleged photograph of a Home Depot "store shelf display." Exhibit 2 to the Declaration of Trent Mallory in Support of Poly-America, L.P.'s Response to API Industries, Inc.'s Motion for Judgment on the Pleadings ("Mallory Decl."). The "display" photograph is not in the pleadings and is irrelevant under the applicable side-by-side test. This is not a trademark infringement case.

[2] Remarkably, plaintiff also cites to *Contessa* (PM 2, 6, 7) but fails to acknowledge its holding on this very point.

Plaintiff's continued submission of misleading pictures of the accused box and arguments contrary to settled Federal Circuit law shows that Poly is simply pursuing a meritless case against a lawful competitor on a marginal patent for a six-sided box design in a crowded art. Such conduct burdens this Court's already overloaded docket; this case can and should be disposed of as a matter of law on this motion.

I. **PLAINTIFF IGNORES THE "OVERALL" APPEARANCE TEST AND CONTINUES TO RELY ON MISLEADING PHOTOGRAPHS**

The parties are in agreement that the legal standard for determining infringement is a "side-by-side comparison" (PM 8, 10) comparing the patent drawings to the accused product in their "overall" appearance (DM 19, PM 10)[3] and viewing "the design as a whole." (PM 10, 14.)[4] But Plaintiff then departs from this acknowledged standard by arguing that the single feature of plaintiff's design of the "front opening" of the box with "elliptical" tab could cause a reasonable fact-finder to find infringement because the tab shape is "identical" and the "opening of the accused box is on the same panel as depicted in the '719 Patent" (PM 8) and the same "shape." (PM 15.) These arguments are meritless for two reasons. First, Defendant's box opening is not just "on the front of the box" or "on the same panel" but is plainly across the front and continuing across the side panel, whereas plaintiff's design is only on part of the front. This alone is sufficient to find that the designs are not "substantially the same to the ordinary observer." *Egyptian Goddess, supra,* 543 F.3d at 678 (four sided buffer does not infringe design for three sides); *MSA Products Inc. v. Nifty Home Products, Inc.,* 883 F. Supp. 2d 535, 540 (D.N.J. 2012) (Rule 12(b)(6) dismissal comparing 3 cup drawer to 6 cup drawer). Second, there are additional differentiating features in the "overall design" which must also be considered. *Contessa, supra*, 282 F.3d at 1379. Finally, the test on this motion is not whether there is "no set of facts" to prove plaintiff's case (PM 4) but whether under Rule 12 there is any "plausible"

---

[3] *Contessa, supra,* 282 F.3d at 1377, 1381.
[4] *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 675, 677, 680, 682 (Fed. Cir. 2008); *Contessa, supra,* 282 F.3d at 1376, 1378, 1381.

2

claim after considering the actual product before the court. *MSA, supra; Great Western Min. & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) ("no set of facts" test was "retired" by the Supreme Court in *Twombly* and *Iqbal*).

### A.  **Plaintiff Continues to Rely on Misleading Photographs.**

Compounding its error of relying on only one feature, plaintiff then purports to illustrate the one alleged "similarity" by submitting more misleading photographs, such as comparing patent Figure 11 (bottom view) with a new photograph taken from the bottom of the accused product, but showing it open only on the front face <u>despite its perforations and design to open on both the front and adjoining side</u>.[5] (PM 8, illustration of Fig. 11 and "Accused Product – Open." Mallory Decl., Exs. 1, 4.)  Plaintiff's argument that the product (bags) could be removed "when the panel is opened only the edge of the front panel" (PM 9, fn. 1) or that Poly "found" the flap "easily opens to the edge … and not beyond" (PM 9) suggests functionality tests, which are irrelevant to the settled side-by-side test for design patent infringement.

As pointed out in API's moving papers, the photograph of the accused product attached to the Complaint showed the front opening only <u>part</u> way on <u>one</u> face, although the box opening clearly extends across the front and right side with perforations so indicating.[6] (DM 3.)  Plaintiff was advised that "Exhibit B" to the Complaint is misleading.[7]  Plaintiff's counsel responded that "Poly America did not notice that the flap extended down the right side. . . .  It was not until you pointed this out in your letter that Poly-America first noticed that the perforation extended down the side of the package."  (Thomashower Decl. Ex. 6.)  Now, in responding to the motion, even

---

[5] Plaintiff admits that the patent and the accused product both have a "perforated opening" (PM 8) showing where the box will open – and they are different (one side versus two sides).

[6] Mallory Decl. ¶ 2, inaccurately describes Ex. 1 as a "photograph of the accused product open" – but omits the words "part way."

[7] Plaintiff's letter to defendant's counsel specifically pointed out this error:

> If you look at that product you will immediately observe that the box opening flap extends both on the front panel and completely across to the adjacent right side panel.  In addition, the accused product has no tabs and no slots anywhere on the box.  May 17, 2013 letter, Exhibit 5 to the Declaration of William Thomashower in Support of Defendant's Motion (Thomashower Decl.").

after being informed of the misleading Complaint Ex. B, plaintiff's opposition submits two more photographs with the same misleading "half-open" appearance and submits it again side-by-side with Figure 11 of the Patent. (PM 8.)

### B. Infringement is Based on the Overall Appearance of the Patented Design of an Accused Product, Not One Feature.

Continuing the effort to create "similarity" where there is none, plaintiff argues that a similarity of this one feature on the front of the box should be sufficient. (DM 8, 10, 14.) But as explained in *Contessa* and *Egyptian Goddess, supra*, the proper test of "overall appearance" of the patented design must take into account "all of the drawings" shown in the patent (*Contessa, supra*, at 1381) and not merely "a subset" of all the drawings shown in the design patent. *Id.* at 1379. Thus, plaintiff's attempt to focus only on the alleged "dominant" front face opening is improper.[8]

In *Contessa*, the Federal Circuit reversed the district court's finding of infringement of a shrimp platter design patent because it omitted any consideration of "the underside of the sample tray" which was not "compared to the '612 design shown in Figure 4."

> [T]he district court remarked that "we must bear in mind that the attention of the ordinary observer at the point of sale is far more likely to focus on the arrangement of shrimp than minor features of the structure of the underlying tray, for the simple reason that the shrimp cover and obscure most structural features of the tray" … We conclude that this omission was erroneous. We hold that the "ordinary observer" analysis is not limited to the ornamental features of a subset of the drawings but instead must encompass the claimed ornamental features of all figures of a design patent. 282 F.3d at 1379.

### C. Plaintiff Cannot "Read Out" of the Overall Design Those Portions of Its Patent Drawings which Show No Similarity to the Accused Product.

Despite the fact that the '719 Patent clearly shows three tabs and three associated tab slots, unequally spaced along the top rear and front folding flaps (Figure 8) and a solid bottom with no flaps (Figure 14, "bottom view"), plaintiff argues that these features should be ignored

---

[8] "[A]n ordinary observer would perceive the front portion of the flap as the dominant, if not exclusive, portion of the flap." Letter from plaintiff's counsel, Thomashower Decl. Ex. 6, p. 2.

4

because during the "normal life and use of the product … an ordinary observer simply would not observe the tabs and slots with a foldable versus solid bottom." (PM 6.) If that were true, it would not have been allowed as claimed. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir. 1993). Once allowed, *Contessa* holds:

> Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement. This is because "[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design." *KeyStone* … 997 F.2d 1444, 1450 … entity … <u>If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design</u>. *Door-Master Corp. v. Yorktowne, Inc*., 256 F.3d 1308, 1313, 59 USPQ2d 1472, 1475 (Fed. Cir. 2001). 282 F.3d at 1378. (Emphasis added).

In other words, if Poly did not want to have the tabs, flaps and solid bottom considered part of the claim to its "ornamental design," these would have had to have been shown in broken lines. MPEP 1503.02 (III) and ¶ 15.50.02; *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 1262 F.3d 1113, 1116 (Fed. Cir. 1998).[9] The tabs, slots and bottom were not so marked; thus, they must be compared as part of the "overall design," which are not in the accused box.[10] The patentee is necessarily bound by all the features in all the drawings by which it obtained allowance over the crowded prior art. (See Thomashower Decl., p. 7 Prior Art, Exs. 4A-4G.) *Goodyear Tire, supra,* 1262 F.3d at 1121 (patentee's argument that groove was "immaterial" part of design properly rejected since it was part of the design to sustain validity).

II. **PLAINTIFF'S ATTEMPT TO READ OUT CLAIMED ELEMENTS OF THE DESIGN DRAWINGS AS "NOT OBSERVABLE" IS CONTRARY TO FEDERAL CIRCUIT PRECEDENT.**

Plaintiff attempts to read out of its patent drawings other differences in the overall appearance by arguing that "[d]uring the normal life and use of the product container, an

---

[9] For the same reason, plaintiff may not argue *post hoc* that the tabs and slots "are functional" and should not be considered. This argument was reserved to defendant if the case is not dismissed, but was expressly <u>not</u> relied on for this motion based on the pleadings. (DM 6, n. 6.)

[10] Thus, having claimed the bottom of the box as a single panel, without flaps, plaintiff is not free to argue that the solid bottom "is also obviously functional" and "is not an ornamental design feature." (PM 6.) Contrary to plaintiff, defendant did not admit that the solid bottom "is not part of the patented design" (PM 6) but cited it as a specific design difference. (DM 3, 11, 13.)

ordinary observer simply would not observe the tabs and slots or the foldable versus solid bottom. The box top and bottom remain closed during the normal use of the product." (PM 6.)

### A. The Ordinary Retail Consumer Would See All the Box Features in the Design at Some Point in the Life of The Product.

*Contessa, supra,* found that consumers would see the disputed "underside" design of the shrimp trays after they removed the packaging and during use, so that "it was error for the district court to discount and overlook Figure 4 [of the underside of the tray]." 282 F.3d at 1381.

In the same way here, consumers purchasing the box of 150 plastic bags would take if off the shelf, take it home, and during use, see and have access to the entirety of the accused box opening on two sides. Moreover, because the test is "visible" during the "article's life . . . ending with the ultimate destruction, loss or disappearance of the article," *id.* at 1379, the same consumer upon disposing of the box prior to its "destruction" would have a view of the box opened and flattened, such as for paper recycling, which would then show that it lacked any tabs and notches along the top flaps ('719 Patent, Fig. 10) and lacked a solid base ('719 Patent, Fig. 14).

Plaintiff makes the same mistake as the patent owner did in *Contessa*, assuming that the view of the ordinary observer must be determined by what can be seen "at the point of sale" when "on display" "merchandised in the store." (PM 7, 9.)

> In other contexts, we have counseled <u>against limiting the design patent infringement analysis to the point of sale</u>. In distinguishing the analysis of design patent infringement from that of trademark infringement, we commented:
>
>> A determination that the shape of the alleged infringing concentrate package is not visible to the consumer at the time of sale and, therefore, the consumer is unlikely to be confused by the similarity in a competitor's product is inapposite. Concluding that a purchaser is unlikely to be confused by any similarity in a competitor's product only serves to blur the otherwise clear line that exists between the test for infringement of a design patent and the "likelihood of confusion" test for infringement of a trademark. *Unette Corp. v. Unit Pack Co.,* 785 F.2d 1026, 1029, 228 USPQ 933, 934 (Fed. Cir. 1986) 282 F.3d at 1380; and citing *Door-Master Corp. v. Yorktowne, Inc.,* 256 F.3d 1308, 1313 (Fed. Cir. 2001) (rear cabinet door features were "visible at some time during the normal use of the product.") 282 F.3d at 1381. (Emphasis added).

6

Plaintiff seems to believe the test for the "ordinary observer" is what will motivate a consumer purchase at the point of sale, as in a trademark case. This is not correct.

> Although the "ordinary observer" test of *Gorham* is formulated in terms of a hypothetical purchasing decision, <u>nothing</u> in *Gorham* restricts the comparison between the patented design and the accused product to features visible at the point of purchase. <u>Rather than limiting the assessment of infringement to the point of purchase, the *Gorham* test applies an objective frame of reference, the hypothetical purchasing decision</u> to be made by an ordinary observer, to all ornamental features <u>visible at any time</u> during the normal use of a product. … Thus, <u>we hold that the "ordinary observer" analysis is not limited to those features visible at the point of sale</u>, but instead must encompass all ornamental features visible at any time during normal use of the product. *Contessa, supra,* 282 F.3d at 1381. (Emphasis added). In sum, the features of the accused box which overall distinguish it from the patented design – a two sided opening, no top tabs and notches, no solid bottom and a rectangular shape[11] – cannot be disregarded as plaintiff proposes by limiting the consumer's view to that on a "display shelf" at the "point of purchase."

### B. <u>Alternatively, the Ordinary Observers Are the Plastic Bag Manufacturers, Like Plaintiff and Defendant, Who See All Features of the Design During the Assembly of the Ultimate Retail Product.</u>

Plaintiff assumes that a retail consumer is the ordinary observer. As we have shown above, such a consumer would observe substantial differences and there is no "fact question" as to how far the opening extends (PM 9) because the accused product is before the Court for side-by-side comparison. Alternatively, the ordinary observer could also be "determined from the viewpoint of the person who is the ordinary purchaser of the article charged to be an infringement." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 1262 F.3d 1113, 1116 (Fed. Cir. 1998) (tire design judged by trucker who would purchase accused truck tire). Likewise, in *Arminak, supra,* involving the design of trigger sprayers for use with liquid household products. The Court held:

> Consequently, the purchaser of the patented and accused designs in this case is the purchaser of one of a retail product's <u>component</u> parts that is thereafter assembled with other parts to <u>make the retail product</u>. To hold that such a purchaser is the

---

[11] The '719 Patent drawing shows a virtually square box on the long dimensions (Fig. 1). The accused box is rectangular. Exhibit 4 to the Kahana Declaration in Support of Defendant's Motion ("Kahana Decl.").

> appropriate hypothetical ordinary observer fits squarely with our precedent … 501 F.3d at 1323. (Emphasis added).
>
> Under our case law, the ordinary observer test requires, as the district court recognized, the comparing of the accused and patented designs from all views included in the design patent, <u>not simply those views a retail customer seeking to buy would likely see when viewing the product at the point of sale.  <i>Contessa, 282 F.3d at 1379</i></u>. 501 F.3d at 1324 (emphasis added.)

The Complaint here likewise alleges a "product container" used in the "manufacture" and "sale" of trash bags by both parties.  Complaint ¶¶ 6, 7, 8.  In packaging the bags, the manufacturers necessarily see all six sides of the box before delivering to Home Depot for retail sale.  *Id.*

In short, whether the Court views the "ordinary observer" of the cardboard box as a retail purchaser or an industrial manufacturer, all the design features of the box are observable by both of them during its "life."  The accused box is substantially different.

### III. THERE IS NO POSSIBLE INFRINGEMENT UNDER THE ALTERNATIVE TEST OF *EGYPTIAN GODDESS* OF THE HYPOTHETICAL ORDINARY OBSERVER WITH KNOWLEDGE OF THE PRIOR ART.

Alternatively, but not required where the differences are so clear, the Court can apply the test of *Egyptian Goddess* for designs *arguendo* "not plainly dissimilar" and consider the "hypothetical ordinary observer who is conversant with the prior art."  543 F.3d at 678.  The Court in *Parker v. Kimberly-Clark Corp.*, No. 11 Civ. 5658, 2012 WL 74855 (N.D. Ill. 2012) applied both tests to dismiss under Rule 12(b)(6).

Defendant provided full copies of seven of 20 prior art patents cited <u>of record</u> in the '719 Patent annexed to the Complaint.  Plaintiff's opposition is two-fold: a) the Court should not consider art of record (PM 5) and b) the art of record is "substantially different" from the '719 Patent design.  (PM 12-13.)  As to the first point, plaintiff fails to rebut any of the three cases where the public record (and a patent file wrapper) was relied on (see cases at DM 15), and no claim is made that the submitted references are not accurate copies.

8

Plaintiff misses the point in arguing against anticipation, that "None of the prior art reflects a rectangular box opening of the shape depicted in the '719 patent" with the "trapezoidal shape" and "foldable extension." (DM 12.) These elements are all found in this crowded art.

A "trapezoidal shape" opening is found in 4 of the 7 examples (Thomashower Decl. Exs. 4A, 4B, 4E and 4F).[12] A "foldable extension" of various shapes at the end of the opening is found in 6 of the 7 examples (Thomashower Decl. Ex. 4A, 4B, 4C, 4D (Fig. 2, not shown by plaintiff's PM at 11), 4E, and 4G). A "rectangular box" is found in all of the 7 prior art examples. (Thomashower Decl. Exs. 4A-4G.)

As found in *Parker* and *Egyptian Goddess, supra*, using this alternative test and in view of the above numerous "similarities between the prior art and the patented design" 543 F.3d at 673, "differences between the claimed and accused designs that might not be noticeable in the abstract can become significant … ." *Id.* at 678. This prior art even has some tabs and notches. Thomashower Decl., Ex. 4A, Fig. 5, Ex. 4E, Fig. 8. In any event, the test is the design "as a whole" accounting for all fourteen drawings claimed in the '719 Patent which includes single face opening, three tabs and three notches, solid bottom and square face shape. Defendant's box lacks all of these.

### IV. API SHOULD BE AWARDED ITS ATTORNEYS' FEES.

Plaintiff admitted that it had not "noticed" the extent of the accused box opening across the entire "right side" panel. Plaintiff then submitted more misleading photographs (DM12). Plaintiff has now presented a "point of sale" argument rejected in prior Federal Circuit decisions. This Court should also grant defendant its costs and attorneys' fees under 35 U.S.C. § 285.

---

[12] Plaintiff's attempt to place sample figures in its brief at PM 11 is incomplete, particularly as regards the '731 reference (tissue box with concave sides and two sided "trapezoidal opening") where the reproduction in plaintiff's brief omits the perforations of Fig. 1. See Thomashower Decl. Ex. 4F, Patent to Meeker, clearly showing the same two sided opening, beginning with a trapezoidal shape on the front face, like the accused box here. Plaintiff contradicts the plain drawing of Meeker Ex. 4F in stating that perforation "is not" trapezoidal (DM 13), when that is exactly how it begins on the Meeker front face and extends across the side, the same as the accused box.

## **CONCLUSION**

API respectfully requests that the Court grant its motion for judgment on the pleadings and award it costs and attorneys' fees

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

OF COUNSEL:

*Attorneys for Defendant API Industries, Inc.*

William Thomashower
Carla Sereny
SCHWARTZ & THOMASHOWER
15 Maiden Lane, Suite 705
New York, NY 10038
(212) 227-4300

August 8, 2013

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 8, 2013, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Erica W. Harris, Esquire<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston, TX  77002<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)