IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLY-AMERICA, L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 13-693-SLR |
| | ) |
| API INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

At Wilmington this 10th day of April, 2014, having reviewed defendant's motion for judgment on the pleadings and the papers filed in connection therewith; the court resolves the motion consistent with the following reasoning:

1. **Introduction.** Plaintiff Poly-America, L.P. ("Poly") and defendant API Industries, Inc. ("API") are competitors in the manufacture and sale of household plastic bags, sold in cardboard containers at retailers such as Home Depot, Inc. Poly instituted suit against API asserting infringement of U.S. Patent No. D569,719 S ("the '719 patent") titled "Product Container," which patent issued May 27, 2008. The '719 patent contains a single design claim[1] based on 10 drawings showing different views of a six-sided folding cardboard box with a front opening. API has moved for dismissal of the case based on its assertion that its cardboard box design is "not substantially similar" to the patented design.

2. **Standard of Review.** "The purpose of judgment on the pleadings is to

---

[1] "The ornamental design for a product container, as shown and described." (D.I. 1, ex. A)

dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetic Int'l, Inc. v. Mexus Mad. LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008). In the context of this case, both parties agree that the legal standard for patent design infringement found in the Federal Circuit's opinion in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*), is controlling:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham* [*Mfg. Co. v. White*, 81 U.S. 511 (1871)]. In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art . . . .

543 F.3d at 678. In further illuminating the above standard, the Federal Circuit has held that: (a) "articles which are concealed or obscure[d] in normal use[2] are not proper subjects for design patents, since their appearance cannot be a matter of concern," *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (citations omitted); and (b) where a design contains both ornamental and functional features, it is proper "to separate the functional and ornamental aspects" because the scope of the design claim "must be construed in order to identify the non-functional aspects of the design as shown in the patent," *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). "[C]ourts have dismissed claims of design

---

[2]"Normal use" in the design patent context has been defined by the Federal Circuit to be the "period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." *In re Webb*, 916 F.2d 1553, 1557-58 (Fed. Cir. 1990).

infringement on Rule 12(b)(6) motions where, as a matter of law, the court finds that no reasonable fact-finder could find infringement." *MSA Products Inc. v. Nifty Home Products, Inc.,* 883 F. Supp. 2d 535, 540 (D. N.J. 2012) (collecting cases).

3. **Analysis.** Comparing the accused and patented design, I conclude that they are not plainly dissimilar. API identifies three features of the accused design that it contends are different from the patent design: (a) the accused design has an opening that extends beyond the front panel of the box to the side panel;[3] (b) the accused design has no top flaps with no tabs and no slots;[4] and (c) the accused design has bottom flaps rather than a solid bottom.[5] (D.I. 12 at 13)

4. The solid bottom cannot be a design difference that renders the accused product substantially dissimilar because it is not an ornamental design feature. *Egyptian Goddess,* 543 F.3d at 680. With respect to the second feature, an ordinary observer does not watch the box being formed in the manufacturing facility but, instead, sees the box when it is merchandised in the store. The ordinary observer, therefore, would not observe the tabs and slots,[6] as the box top remains closed during the normal use of the container.[7] Finally, to the extent the second and third features identified above are considered functional, they should not be considered design elements that

---

[3] *Compare* figure 1 of the '719 patent.

[4] *Compare* figures 8-10 of the '719 patent.

[5] *Compare* figure 14 of the '719 patent.

[6] Or the foldable versus solid bottom.

[7] API admits that a box "has to be formed and closed for packaging." (D.I. 12 at 19, n.9)

3

would be observed by the ordinary observer.

  5. With respect to the remaining feature, certainly the accused and patented designs are not "plainly dissimilar" when the boxes are merchandised, as the only difference between the two is that the perforations that mark the opening in the accused design extends beyond the front of the box, as depicted below:



Fig. 1 of '719 Patent      Accused Product - Closed

(D.I. 15 at 8) It also remains an issue of fact whether the perforated extension of the accused design is actually a relevant difference, i.e., whether an ordinary observer would actually open the accused box to its full extent if not necessary to reach the product.

  6. I decline to pronounce, as a matter of law, that the perforated opening in the accused design would be observed by an ordinary observer as "plainly dissimilar" to that depicted in the '719 patent, especially in light of the Federal Circuit's guidance in *Egyptian Goddess*:

  "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser

4

> usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." [*Gorham*,] 81 U.S. at 528.  In the case before it, the Court concluded that "whatever differences there may be between the plaintiffs' design and those of the defendant in details of ornament, they are still the same in general appearance and effect, so much alike that in the market and with purchasers they would pass for the same thing - so much alike that even persons in the trade would be in danger of being deceived." *Id.* at 531.

543 F.3d at 670.

7.  The final prong of the analysis is whether, as a matter of law, an ordinary observer would find the two designs substantially similar in light of the prior art. *Id.* at 678.  In this regard, API has identified seven pieces of prior art that were cited in the '719 patent, depicted below:





(D.I. 14, ex. 4; D.I. 15 at 11)

8. Once again, I decline to pronounce, as a matter of law, that the overall visual differences between the accused design and patented design are greater than the differences between the patented design and the prior art. *Egyptian Goddess*, 543 F.3d at 678. As noted, the accused design and the patented design appear the same in general appearance and effect, that is, rectangular boxes "with a perforated opening on the front in a trapezoidal shape with a foldable extension that is elliptically shaped and vertically oriented." (D.I. 15 at 12) None of the prior art references appear to combine these attributes, leaving the matter as an issue of fact.

9. **Conclusion.** Based on the above analysis, API's motion for judgment on the pleadings (D.I. 11) is denied. An order shall issue.

_____
United States District Judge