# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLY-AMERICA, L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 13-693-SLR |
| | ) |
| API INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

Brian Farnan, Esquire of Farnan, LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Erica W. Harris, Esquire and LeElle Krompass, Esquire of Susman Godfrey LLP.

Jack B. Blumenfeld, Esquire and Michael J. Flynn, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: William Thomashower, Esquire and Carla Sereny, Esquire of Schwartz & Thomashower.

## MEMORANDUM OPINION

Dated: November 25, 2014
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On April 17, 2013, plaintiff Poly-America, L.P. ("Poly") instituted suit against defendant API Industries, Inc. ("API"), asserting infringement of U.S. Patent No. D569,719 S ("the '719 patent"). The '719 patent, titled "Product Container," issued May 27, 2008. The '719 patent contains a single design claim[1] based on 10 drawings showing different views of a six-sided folding cardboard box with a front opening. API moved for judgment on the pleadings based on its assertion that its cardboard box design is "not substantially similar" to the patented design. On April 10, 2014, the court issued a memorandum and corresponding order denying API's motion for judgment on the pleadings. (D.I. 78; D.I. 79) The court also denied API's subsequent motion for reconsideration of the order denying judgment on the pleadings. (D.I. 104)

Presently before the court are Poly's motion for summary judgment (D.I. 105); API's motion for summary judgment of non-infringement (D.I. 106); and API's motion for summary judgment of invalidity (D.I. 107). Additionally, Poly has filed a motion to exclude certain opinions of API's proposed expert. (D.I. 118) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

Poly is a limited partnership organized and existing under the laws of the State of Texas. API is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business in Orangeburg, New York. Poly and API are competitors in the manufacture and sale of household plastic bags, sold in

---

[1]"The ornamental design for a product container, as shown and described." ('719 patent, claim)

cardboard containers at retailers such as The Home Depot, Inc. ("Home Depot").

Prior to 2012, both Poly and API sold trash bag products for Home Depot under the Husky® and UltraSac® brands, respectively. (D.I. 108 at 5; D.I. 121 at 2) In 2012, Home Depot invited API and Poly to bid on Home Depot's house brand "HDX" business. (*Id.*) Home Depot selected both API and Poly to supply trash bag products in various sizes and box counts for the HDX brand. (*Id.*) Poly was selected as the "lead" product, and Home Depot communicated with API regarding a redesign of API's products, which ultimately lead to the production of the accused products. (D.I. 121 at 3)

## III. STANDARDS OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

2

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## B. Infringement

3

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). A patent holder has the burden of proving infringement by a preponderance of the evidence. *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1187 (Fed. Cir. 1988). The legal standard for patent design infringement is set forth in the Federal Circuit's opinion in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), as follows:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham* [ *Mfg. Co. v. White*, 81 U.S. 511, —— S.Ct. ——, 20 L.Ed. 731 (1871) ]. In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art....

543 F.3d at 678. In further illuminating the above standard, the Federal Circuit has held that: (a) "articles which are concealed or obscure[d] in normal use[2] are not proper subjects for design patents, since their appearance cannot be a matter of concern," *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (citations omitted); and (b) where a design contains both ornamental and functional features, it is proper "to separat[e] the functional and ornamental aspects" because the scope of the design claim "must be construed in order to identify the non-functional

---

[2]"Normal use" in the design patent context has been defined by the Federal Circuit as the "period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." *In re Webb*, 916 F.2d 1553, 1557-58 (Fed. Cir. 1990).

4

aspects of the design as shown in the patent," *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

## C. Invalidity

### 1. Functionality

Design patents protect "a new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. "An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (citation omitted). "[T]he determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997). Additionally, "a design patent is not invalid if the functional aspect could be accomplished in ways other than by the patented design." *Motorola, Inc. v. Alexander Mfg. Co.*, 786 F. Supp. 808, 812 (N.D. Iowa 1991). An accused infringer may raise the affirmative defense of invalidity due to functionality, and the accused infringer bears the burden of establishing invalidity by clear and convincing evidence. *See L.A. Gear*, 988 F.2d at 1123.

### 2. Anticipation

Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United

5

States." In the context of design patents, an anticipating publication "must show the same subject matter as that of the patent, and must be identical in all material respects." *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997). As with infringement, the test for anticipation is whether "in the eye of an ordinary observer . . . two designs are substantially the same." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) (quoting *Gorham [ Mfg. Co. v. White*, 81 U.S. 511, —— S.Ct. ——, 20 L.Ed. 731 (1871) ]). The court must consider the "design as a whole," but "this does not prevent the district court on summary judgment from determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison." *Int'l Seaway Trading Corp.*, 589 F.3d at 1243. An alleged infringer challenging the validity of a patent under § 102 must establish anticipation by clear and convincing evidence. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1055 (Fed. Cir. 2010).

### 3. Obviousness

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a question of law, which depends on underlying factual inquiries.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or

6

> nonobviousness of the subject matter is determined. Such
> secondary considerations as commercial success, long felt but
> unsolved needs, failure of others, etc., might be utilized to give light
> to the circumstances surrounding the origin of the subject matter
> sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

For design patents, "'the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.'" *Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1380-81 (Fed. Cir. 2009) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)). Specifically, "the inquiry is whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." *Durling*, 101 F.3d at 103. Such an inquiry involves a two step process. First, the court identifies "a single reference . . . the design characteristics of which are basically the same as the claimed design." *Id.* (citation omitted). The court must "discern the correct visual impression created by the patented design as a whole" and "determine almost instinctively whether the two designs create basically the same visual impression." *Id.*

Second, "other 'secondary' references 'may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design.'" *Titan*, 566 F.3d at 1381 (quoting *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982)). "These secondary references may only be used to modify the primary reference if they are so related [to the primary reference] that the appearance of certain

ornamental features in one would suggest the application of those features to the

other." *Durling*, 101 F.3d at 103 (citation omitted).

"Because patents are presumed to be valid, *see* 35 U.S.C. § 282, an alleged

infringer seeking to invalidate a patent on obviousness grounds must establish its

obviousness by facts supported by clear and convincing evidence." *Kao Corp. v.*

*Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006) (citation omitted). In conjunction

with this burden, the Federal Circuit has explained that,

> [w]hen no prior art other than that which was considered by the
> PTO examiner is relied on by the attacker, he has the added
> burden of overcoming the deference that is due to a qualified
> government agency presumed to have properly done its job, which
> includes one or more examiners who are assumed to have some
> expertise in interpreting the references and to be familiar from their
> work with the level of skill in the art and whose duty it is to issue
> only valid patents.

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting

*Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

## IV. DISCUSSION

### A. The '719 Patent

#### 1. Infringement

Poly alleges that API sells multiple box designs for Home Depot's HDX private

label which infringe the '719 patent.[3] Both parties agree that the patented design claims

---

[3]The five accused box designs are: (a) "HDX 150 Count Kitchen Bags": SKU
716 866, 13-gallon, 150 count; (b) "HDX Drawstring Large Trash Bags": SKU 960 098,
33-gallon, 50 count; (c) "HDX Extra Large Clear Trash Bags": SKU 677 856, 50-gallon,
50 count; (d) "HDX Extra Large Black Trash Bags": SKU 960 362, 50-gallon, 50 count;
and (e) "HDX Waste Basket Liners": SKU 960 428, 10-gallon, 250 count. (D.I. 125 at ¶
4)

8

at least the following three features previously identified by the court: (1) an opening

front panel with a tab; (2) top flaps with tabs and corresponding slots; and (3) a solid

bottom.[4]  (D.I. 78 at 3)  The parties disagree, however, as to whether these features are

"ornamental" rather than "functional" and whether the accused designs are

"substantially similar" to the claimed design.[5]

In its motion for summary judgment on non-infringement, API first argues that the

front opening flap and "finger friendly" rectangular pull tab of the patented design are

purely functional and, as such, are not properly considered part of the "ornamental

design" for purposes of the infringement analysis.  (D.I. 124 at 20-21)  For support, API

cites to the declaration of its expert, Robert Collins ("Collins"), in which he states that

"[t]he use of the trapezoidal feature . . . balances the structural integrity of the container

while providing the best possible access by the consumer to the product."  (D.I. 110, ex.

B at ¶ 17)  Regarding the tab, Collins opined that "providing a wider [rectangular] tab

---

[4]API further alleges that Figure 8 of the '719 patent shows a "score line" on the
face of the opening flap, a possibility acknowledged by Poly's expert, John R. Howard
("Howard").  (D.I. 153, ex. 2 at 92:9-18)

[5]As to whether the accused designs share common features among themselves,
API contends that one of the accused designs, SKU 716 866, is "representative of all
[accused] designs."  (D.I. 152 at 8 n.6)  API notes that some of the accused designs do
have "small variations in the roundedness of the rectangular tab corners and the type of
perforations" (D.I. 124 at 6 n.6), but Poly concedes that "[t]hese differences are not
substantial as confirmed [by the fact] that neither party noticed the differences and the
changes would not affect API's expert[']s opinion on infringement" (D.I. 125 at ¶ 5).  In
its briefs, Poly refers to three categories of designs, but admits that the differences
between at least two of the design categories are few.  (D.I. 133 at 7)  Specifically, the
first design category (SKU 716 866 and SKU 960 098) differs from the second design
category (SKU 960 362) in the angle of the curve of the tab on the trapezoidal opening.
(D.I. 135, exs. A-C; D.I. 134, ex. 5 at 26:10-13)

9

makes gripping and tearing open the feature much easier."[6]  (D.I. 110, ex. A at ¶ 66)

Second, API argues that the accused design and the '719 patent share no common ornamental features. (D.I. 124 at 23)  With respect to the trapezoidal opening and tab, API argues that, even if the court were to determine that these features are ornamental rather than functional, an ordinary observer would not perceive them as being "substantially the same" as those in the accused design.[7]  (Id. at 25)  Specifically, API contends that the claimed opening is only on the front face of the box, while the opening in the accused design additionally extends to the adjacent side panel.  (Id.)  In his expert report, Collins wrote that "[e]ven if the consumer does not readily notice the perforations, when opening the package, the force to pull the front face open continues across and naturally starts tearing across the side perforations, making the second panel opening clear to the consumer of the API box."  (D.I. 126, ex. A at ¶ 91)

As for the remaining two features, API argues that the patented design differs from the accused design in that:  (1) the accused design has top flaps of unequal heights with no tabs and no slots;[8] and (2) the accused design has bottom flaps rather

_____

[6]API additionally argues that, even if the court were to find any of the claimed features to be purely functional, it must still consider them as part of the court's infringement analysis.  (D.I. 124 at 21-22)  This argument, however, is inconsistent with the Federal Circuit's holding in *Richardson v. Stanley Works, Inc.* that the scope of a design patent with both functional and ornamental elements "is limited to those [ornamental] aspects alone and does not extend to any functional elements of the claimed article."  597 F.3d at 1293-94.

[7]API conceded at oral argument that "[f]or purposes of the summary judgment motion, we have accepted that the ordinary observer is the retail consumer."  (D.I. 161 at 17:15-17)

[8]*Compare* figures 8-10 of the '719 patent.

10

than a solid bottom.[9,10] (D.I. 124 at 6) API contends that the top flaps and tabs as well as the solid bottom "would be seen by an ordinary observer during the normal use through 'the entire life' of the product." (Id. at 23-24) In his expert report, Collins stated that the consumer would notice the difference in height of the top flaps and the tabs and corresponding opening slots "upon opening the box from the top or flattening it for recycling, which is part of the life cycle of corrugated boxes." (D.I. 126, ex. A at ¶ 95) Regarding the flat bottom, Collins wrote that the "differences in the bottoms . . . may not be obvious at the time of purchase but would be readily seen by the ordinary observer during use or later when flattening the box for recycling." (Id.)

Poly responds that even if "normal use" encompasses the "ultimate destruction of the product container, there is no evidence that the ordinary observer would either open or dispose of the product container in a way that would preserve intact the tops and slots and solid bottom." (D.I. 133 at 13) For support, Poly cites Collins' deposition testimony in which he stated that he had "no idea what the percentage is" of consumers opening the top flaps "such that all the top flaps are intact." (D.I. 134, ex. 8 at 182:2-10)

---

[9]Compare figure 14 of the '719 patent.

[10]API does not argue, for purposes of its motion on non-infringement, that the top flaps and tabs and the flat bottom are purely functional, instead referring to the flaps and tabs as "ornamental" features that are not "dictated by function since they could be replaced by glued flaps or an 'auto' closure." (D.I. 124 at 22 n.15, 23) Poly argues that, insofar as API claimed the top tabs and slots are functional in its briefing for motion for judgment on the pleadings (D.I. 12 at 2 n.3), it is now estopped from arguing that these features are ornamental. (D.I. 133 at 13) The court recognizes that while the tabs and slots cannot be "functional" for purposes of APIs affirmative defense of functionality and "ornamental" for purposes of API's argument of non-infringement, API's arguments regarding functionality were couched in conditional rather than absolute terms and, as such, do not prevent API from presenting the alternative argument now.

11

Poly also cites Collins' agreement with the statement that a consumer would "have to open the top flaps in a specific way so as to not tear those tabs and slots" in order to notice the tabs and slots. (*Id.* at 178:19-25)

Poly also argues that, because the top flaps and tabs are concealed during normal use, the "only arguably observable design difference is the extension of the perforated opening on API's product beyond the front of the box." (D.I. 133 at 14) Regarding the noticeability of the extended perforations, Poly cites testimony from API's Chief Operating Officer that Home Depot did not want consumers to see the difference between API's box and Poly's box (D.I. 134, ex. 9 at 58:5-21), and testimony from Poly's own Vice President of Sales that customers do not need to open trash bag boxes beyond the front panel to access the contents (*id.*, ex. 11 at 31:2-9). Poly also cites evidence that "at least three [Poly] employees opened the accused boxes without noticing that the perforation extended to a second panel." (D.I. 133 at 14; *see* D.I. 134, ex. 3 at 295:20-24, ex. 10 at 22:20-23:22, and ex. 11 at 23:20-24:1)

With respect to functionality, Poly contends that even if the trapezoidal opening and tab serve a utilitarian purpose, the shape, proportions and placement of the opening and tab are ornamental and impact the "overall appearance" of the design. (*Id.* at 16-17) Poly cites the report of its expert, in which he opined that "there are an infinite number of trapezoidal designs that are equally acceptable in terms of maximizing carton strength." (D.I. 123, ex. 1 at ¶ 17)

In *Egyptian Goddess*, the Federal Circuit held that "when the claimed and accused designs are not plainly dissimilar, resolution of the question of whether the ordinary observer would consider the two designs to be substantially the same will

12

benefit from a comparison of the claimed and accused designs with the prior art." 543 F.3d at 678. Both parties reference two pieces of prior art that were not considered during the prosecution of the '719 patent: (1) Hefty® 13 gallon tall kitchen bags style 814; and (2) U.S. Patent No. 4,417,661 to Roccaforte. API argues that the accused design is closer to the prior art than the '719 patent because both pieces of prior art, like the accused design, contain a "trapezoidal opening flap with starting tab near the center of one face and continuing over the adjacent side."[11] (D.I. 124 at 11-12) Poly answers that "the accused design is more similar to the patented design than the prior art" due to differences in the tab shape and perforated line angles of the prior art. (D.I. 133 at 18-21)

In light of the full record presented on summary judgment, the court concludes that the patented and accused designs are not "substantially the same." In reaching its conclusion, the court considers the following features of the accused design: (1) the trapezoidal front opening and tab; (2) the four equal-height tops flaps with tabs and corresponding slots; and (3) the solid bottom.

The first analytical step is to determine which features, if any, should be excluded from the court's infringement analysis by virtue of being purely functional. See Richardson, 597 F.3d at 1293. As for the solid box bottom, the court maintains its conclusion from judgment on the pleadings that the "solid bottom cannot be a design difference that renders the accused product substantially dissimilar because it is not an ornamental design feature." (D.I. 78 at 3)

---

[11]In its response brief, API references several additional pieces of prior also purportedly showing two-sided trapezoidal openings. (See D.I. 152 at 16-17)

13

As for the trapezoidal opening and tab, the court finds that, despite any functionality imparted by the trapezoidal shape and "finger-friendly" tab, the appearance of the opening and tab are nonetheless not "dictated by the use or purpose" as there are alternative ways to place, proportion and position the features. The most notable design element of the accused design is the extension of the perforated opening across two faces of the box rather than just the front face. Other ornamental design elements include the shape of the tab and the angle and shape of the perforated lines.

Regarding the top flaps with tabs and corresponding slots, the court finds that while these features do serve a utilitarian purpose, the shape and position of these features is not "dictated" by function and, therefore, these features have ornamental aspects that should be considered part of the overall patented design.[12] The next question is whether the top flaps, tabs and slots are "concealed or obscured" in the box's normal use, defined as the period in the article's life beginning with "manufacture" and ending with the "ultimate destruction" of the article. *In re Webb*, 916 F.2d 1553. In its memorandum regarding judgment on the pleadings, the court found that the tabs and slots "should not be considered design elements that would be observed by the ordinary observer." (D.I. 78 at 3-4) At that time, however, API was arguing that the "ordinary observer" was a box manufacturer who, in the box's normal use, would view the box before assembly. By summary judgment, API was accepting a retail consumer as the "ordinary observer" and had changed the focus of the "normal use" context to

---

[12]Given the court's finding that the design contains several ornamental features, the court concludes that the "overall appearance" is not dictated by function, and grants Poly's motion for summary judgment of no invalidity due to functionality. (D.I. 105)

include the ultimate disassembly and recycling of the box.

In this regard, API presented expert testimony that, regardless of what an ordinary observer would see at the time of purchase, an ordinary observer would view the even top flaps, tabs and slots of the patented design "upon opening the box from the top or flattening it for recycling." (D.I. 126, ex. A at ¶ 95) To defeat API's motion, Poly was obligated to identify a factual dispute with evidence that would permit a reasonable jury to return a verdict in Poly's favor. See Anderson, 411 U.S. at 247-48. Although Poly questioned the **frequency** with which an ordinary observer would view these features, it was unable to point to any evidence that would contradict API's contention that the flaps, tabs and slots are visible at the point of disassembly, or that recycling was part of a box's "normal use." (See D.I. 134, ex. 8 at 182:2-10) (Collins did not identify the percentage of consumers that would open the top flaps "such that the top flaps are intact.") Because Poly failed to identify a genuine issue of material fact with respect to the "normal use" of the box at issue, the court considers the flaps, tabs and slots as part of the overall design for purposes of its infringement analysis.

To further assist with its side-by-side comparison, the court considered the claimed and accused designs in light of the two prior art designs identified by the parties: (1) Hefty® 13 gallon tall kitchen bags style 814;[13] and (2) U.S. Patent No. 4, 417,661. The court finds that, despite the fact that both the accused and claimed

---

[13]Poly contests the use of Hefty® 13 gallon tall kitchen bags style 814 as a reference for the purposes of the court's validity analysis (D.I. 121 at 12), but does not raise a similar objection to its use as prior art for the purposes of infringement (D.I. 133 at 18-21). Regardless, excluding this reference would not alter the court's conclusion regarding infringement.

designs utilize curved rather than straight lines for the perforated opening and tab, the accused design more strongly resembles the prior art given that the perforated opening in both the prior art and accused design extends across two adjacent box faces. Moreover, the four equal-height top flaps, three tabs and corresponding slots in the patented design create a very different visual impression from the four uneven top flaps without tabs and slots in the accused and prior art designs.

In sum, Poly did not proffer evidence related to a box's "normal use," instead relying on the court's reasoning in its prior decision regarding API's motion for judgment on the pleadings. As a result, Poly confined its infringement analysis to the side-by-side comparison a retail consumer would make of the accused products and the patented design on the shelf, relying on the observations of Poly employees in this regard. (See, e.g., D.I. 134, ex. 11 at 31:2-9; D.I. 133 at 14) The court was not provided with actual commercial examples of the accused products or the patented design to aid in its comparison. Moreover, the record reviewed and the burdens of proof are very different in the summary judgment exercise, and Poly proffered no evidence to refute API's expert when he opined that disassembly for recycling is part of a box's "normal use." For all of these reasons and in the absence of contrary evidence, the court accepts that, regardless of what an "ordinary observer" would observe on the shelf, a box's "normal use" extends to its disassembly for recycling, thus exposing all of the claimed ornamental features of the '719 patent which are absent from the accused design. Altogether, then, the claimed and accused designs would not appear "substantially the same" to an ordinary observer. The court grants API's motion for summary judgment of non-infringement.

16

## 2. Invalidity

### a. Anticipation

Poly moves for summary judgment of no anticipation,[14] arguing that "API's own expert testified that there is no prior art reference that is identical to the patented design" and, therefore, anticipation is inappropriate. (D.I. 121 at 6-7; see D.I. 122, ex. 1 at 119:6-14)

API answers that the proper test for anticipation of design patents is whether the reference is "substantially similar," not whether the reference is "identical." See Int'l Seaway Trading Corp., 589 F.3d at 1243. API points out that Poly previously argued that the accused API boxes are "substantially similar" to the patented design despite having perforated openings on two faces. Following the same logic, several pieces of prior art with two-sided perforations would likewise be considered "substantially similar" and would be anticipating references. (D.I. 138 at 26)

In its analysis for infringement, the court concluded that the one-sided perforated opening and equal-height top flaps with tabs and slots are all features of the claimed

---

[14]Poly also moves for summary judgment on: (1) the statute of limitations, laches, waiver acquiescence and estoppel; (2) failure to state a claim upon which relief may be granted; and (3) "exceptional" case status under 35 U.S.C. § 285. Regarding the first issue, API agrees that if Poly limits its suit to only HDX brand boxes and does not include other API boxes that have been on sale for greater than six years, then the suit is not barred by the statute of limitations, laches, waiver, acquiescence or estoppel. (D.I. 138 at 27) As for the second issue, the court has already fully addressed API's pleading in its opinion on API's motion for judgment on the pleadings, and declines to revisit its analysis at the summary judgment stage. (See D.I. 78) Finally, the court grants summary judgment that the case does not warrant exceptional case status under 35 U.S.C. § 285 given the parties' shifting contentions (e.g. API's initial "ordinary observer" contention that was rejected by the court) and the efforts expended by the court in reaching its conclusions.

17

ornamental design. Like the test for infringement, the test for anticipation asks whether

the accused design and the claimed design "are substantially the same" to an ordinary

observer. See Int'l Seaway, 589 F.3d at 1239. None of the identified prior art

references contains a dual-sided perforated trapezoidal opening in conjunction with a

tabbed upper flap and slots and, therefore, none of the prior art references is

"substantially the same" as the claimed design. Accordingly, the court grants Poly's

motion for summary judgment of no invalidity due to anticipation

### b. Obviousness

In its motion for summary judgment of invalidity, API argues that the patented

design is obvious under 35 U.S.C. § 103 because the prior art "consists of a large

number of six-sided boxes for packaging a variety of goods."[15] (D.I. 108 at 13) API

identifies three primary references that purportedly disclose a six-sided box with a

trapezoidal front opening,[16] and three primary references that purportedly disclose a six-

sided box with a trapezoidal opening that extends to the adjacent side.[17] API argues

that all six references have the "same overall shape" as the patented design but "slight

differences in the precise placement" of features. (Id. at 19) Moreover, API argues that

---

[15]API asks the court to take judicial notice of the fact that design patents have a
high allowance rate and low pendency, and to let this inform the court's assessment of
whether the presumption of validity is properly overcome in the instant case. (D.I. 108
at 4) The court declines to do so.

[16](1) Husky® Tall Kitchen Bags (D.I. 109, ex. B); COMMANDER Contractor Bags
Box (D.I. 111, ex. A); and GLAD® 13 gallon tall kitchen bag box (D.I. 109, ex. C).

[17](1) Caraustar 00035 and 00043 for HEFTY® 13 gallon tall kitchen bags style
814 (D.I. 109 exs. D, F); "Paperboard Packaging Textbook" drawing (D.I. 109, ex. G at
7.102); and U.S. Patent No. 4,417,661 (D.I. 109, ex. H at fig. 2).

18

the accused design has the "exact same construction" as the second set of references with two-sided trapezoidal openings, thereby placing the accused design "in the prior art." (Id. at 20)

API also identifies various "secondary references" from the field of "box containers" that allegedly teach the missing elements of "a rectangular tab connected to the beginning of the opening flap,"[18] and "tabs and corresponding slots."[19] (Id. at 21-26) API argues that adding a pull tab to the front face would be obvious to a person of ordinary skill in the art because the feature "is dictated by functional considerations to provide a more effective opening device." (Id. at 24; see D.I. 110, ex. 1 at ¶ 66) With respect to the top tabs and slots, Collins opined that "[u]sing three of these tabs to be inserted into three corresponding slots formed on an opposite panel score would be an obvious extension of this prior art." (D.I. 110, ex. 1 at ¶ 40)

Finally, API argues that there are no secondary factors to rebut a finding of obviousness. (D.I. 108 at 26) API alleges it did not copy the patented design because: (1) the accused API products "have a trapezoid opening that extends across the front face and continuing to the adjacent side, and not solely on the front face as in the '719 [p]atent;" (2) API had not yet seen the '719 patent in 2012; and (3) the use of the trapezoid was selected for functional considerations. (Id. at 26-27) API alleges that, instead of instructing API to copy the patented design, Home Depot instructed API to

---

[18](1) Paperboard Packaging Textbook (D.I. 109, ex. G at 6.102); (2) U.S. Patent No. 4,417,661 (D.I. 109, ex. H at fig. 2); (3) U.S. Patent No. 7,374,076 ("the '076 patent") (D.I. 109, ex. I at fig. 12); and (4) FOOD LION seltzer box (D.I. 109, ex. J).

[19]Paperboard Packaging Textbook. (D.I. 109, ex. G at 6.102)

19

copy the "glossiness" and "cardboard gauge" of Poly's boxes. (D.I. 122, ex. 12 at API01549-51; D.I. 139, ex. A at 36:19-25; *id.*, ex. C at 117:13-119:22) API argues that, regardless, it would be impossible to copy the patent by looking at Poly's commercial box because Poly's commercial box does not embody the patented design. (D.I. 138 at 23)

Poly answers that there is a genuine issue of material fact as to what constitutes prior art, arguing that several references identified by API either post-date the patent application or were not "publicly known, used, or for sale" in the United States prior to the patent application.[20] (D.I. 121 at 12-13) Regarding the similarity of the primary references to the patented design, Poly argues that the primary references do not include the claimed "ornamental features," which Poly defines as the "specific shape, design and placement" of the opening.[21] (*Id.* at 24) Poly also argues that API failed "to articulate any reasoning . . . for why a designer of boxes for trash bags" would modify the primary references with "features from boxes of totally different products." (*Id.* at

_____

[20]Poly argues that Caraustar 00035 for HEFTY® 13 gallon tall kitchen bags style 814 (D.I. 109 ex. D) was not "actually made" for the client until 2006 (D.I. 109, ex. E at 30:19-31:17). Poly also argues that a Starbucks® House Blend box (D.I. 110, ex. A at ex. 8), a Food Lion box (*Id.* at ex. 15), and a Sparkling Seltzer Water box (*Id.* at ex. 16) were not publicly known or in public use prior to the date of the patent application. API responds that the Caraustar box was offered for sale publicly and, therefore, it is an appropriate pre-dating reference. API also argues there is no question of fact regarding the remaining three references because: (1) it did not cite to the Starbucks® House Blend box; (2) the Food Lion box is marked as being "manufactured under" a patent that predates the patent-in-suit; and (3) the Seltzer Water box was noted as contemporaneous prior art that need not be considered by the court. (D.I. 138 at 3)

[21]API replies that if the design solely consists of a trapezoidal opening as argued by Poly, the design is anticipated by prior art disclosing trapezoidal product container openings as early as the 1983 U.S. Patent No. 4,417,661 to Roccaforte. (D.I. 138 at 7-8)

20

25) Moreover, Poly argues that its own expert opined that a designer of ordinary skill would not combine the various pre-existing elements to reach the patented design. (D.I. 121, ex. 1 at ¶ 11)

Finally, Poly asserts that a fact finder could infer knowledge of the patent and intent to copy from, *inter alia*, the fact that API knew that Poly owned intellectual property on the box design (D.I. 122, ex. 9 at API01453), the fact that Home Depot told API to copy Poly's box but to insert its own perforated opening (*id.*), and the fact that API took "the perforation information" for its own design "from artwork provided to [API] from [Home Depot]" (D.I. 110, ex. M at API01553-54). Poly argues that its own boxes implement the patented design despite lacking slots and tabs because the top slots and corresponding tabs are functional and not part of the ornamental design. (D.I. 121 at 28)

The court finds that questions of fact remain regarding the scope of the prior art. (*See supra* note 20) Even if the court were to consider only the undisputed primary and secondary references, both parties present competing expert testimony regarding the motivation to combine features from the secondary references with the primary references, which raises a question of fact. Finally, both parties dispute the existence of the secondary consideration of copying and, viewing the record in the light most favorable to Poly, a reasonable jury could properly credit Poly's evidence in this matter. For these reasons, the court denies API's motion for summary judgment of invalidity.

## B. Motion to Exclude Testimony

Poly moves to exclude: (1) Collins' expert report on non-infringement (D.I. 119,

ex. A); (2) those portions of Collins' expert report on invalidity regarding the issue of functionality (D.I. 119, ex. F) ; and (3) Collins' supplemental expert report (*Id.* at ex. B).[22] Poly argues that "Collins is not an ordinary observer or an expert on what an ordinary observer of the accused products observes; thus, Collins is not qualified to render an opinion of non-infringement." (*Id.* at 3) Poly specifically takes issue with the fact that Collins did not conduct surveys or interviews of customers before reaching an opinion on infringement despite his admission that consumer research is common in non-litigation settings.[23] (*Id.* at 4, 7-8) Instead, Poly asserts that Collins based his opinions on his experience observing other consumers viewing other containers in other contexts. (*Id.* at 5) Poly points out that Collins has never done any testing of opening features of paperboard containers and that his relevant experience is with plastic, not paperboard, containers. (*Id.* at 6-7)

API replies that Collins "has ample and relevant education, training and over 40 years of experience in product packaging." (D.I. 136 at 6) API refutes Poly's allegation that Collins has no experience with corrugated paperboard products, citing Collins' experience conducting laboratory testing of paperboard packaging as well as his experience creating or supervising the design of corrugated containers. (*Id.* at 6-7, 14-

[22]The court focuses its analysis on those arguments relating to the portion of Collins' expert testimony relevant to the court's instant holding, namely, the section of Collins' expert report on non-infringement regarding whether an ordinary observer would notice the difference in height of the top flaps and corresponding slots during the life cycle of the box. (D.I. 126, ex. A at ¶ 95) Poly's remaining arguments concerning Collins' expert report on invalidity and supplemental expert report are denied without prejudice to renew should the case go to trial on API's counterclaim of invalidity.

[23]Poly's own expert did not conduct surveys or interviews of customers, and Poly elected to not offer any expert testimony on infringement. (*See* D.I. 152 at 14)

15) With respect to the particular accused product, API asserts that Collins purchased and examined various accused samples to assist with the preparation of his reports. (*Id.* at 14) Finally, API argues that Collins is qualified to opine on consumer use and reactions given that, over the span of his career, he has been involved in hundreds of consumer tests. (*Id.* at 7)

Rule 702 of the Federal Rules of Civil Procedure allows a qualified witness to testify in the form of an opinion if the witness' "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and if his/her testimony is the product of reliable principles and methods which have been reliably applied to the facts of the case.

Because Poly focuses on Collins' lack of experience with "opening features" of paperboard containers, it does not meaningfully respond to the assertion that Collins has 40 years of experience in product packaging, some of it involving the design of corrugated paperboard containers, as well as extensive experience with consumer testing. These qualifications meet the liberal standard for 'specialized knowledge' under Federal Rule of Evidence 702, and the court was free to consider such testimony in connection with the summary judgment exercise.

## V. CONCLUSION

For the foregoing reasons, API's motion for summary judgment of non-infringement is granted. (D.I. 106) API's motion for summary judgment of invalidity is denied. (D.I. 107) Poly's motion to exclude certain opinions of API's expert is denied in part, with leave to renew the remaining arguments should the case proceed to trial. (D.I. 118) Poly's motions for summary judgment of no invalidity due to anticipation and

23

no invalidity due to functionality are granted. (D.I. 105) Poly's motion for summary judgment that Poly's claims are not barred by the statute of limitations, laches, waiver, acquiescence and estoppel is denied as moot. (D.I. 105) Poly's motion for summary judgment that Poly did not fail to state a claim is denied as moot, and Poly's motion for summary judgment that this case is not an exceptional case is granted. (D.I. 105)